# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMANUEL ADEYINKA,<br>Plaintiff, | : <br> : <br> : |
| v. | :    CIVIL ACTION NO. 18-CV-4897 |
| HOWARD S. LOMAX, *et al.*,<br>Defendant. | : <br> : <br> : |

**MEMORANDUM**

**TUCKER, J.**                                                                                          **NOVEMBER 27, 2018**

Plaintiff Emmanuel Adeyinka filed a *pro se* Complaint against Howard Lomax, an officer of the Philadelphia Police Department, based on Adeyinka's arrest and prosecution for various sex crimes in Philadelphia in 2008. On the second page of his Complaint, Adeyinka also identified the City of Philadelphia as a Defendant, even though he did not include the City as a Defendant in the caption of the Complaint in accordance with Federal Rule of Civil Procedure 10(a). It appears that the City is identified as a Defendant in connection with Adeyinka's incarceration at the Curran-Fromhold Correctional Facility related to his 2008 criminal cases. Along with his Complaint, Adeyinka filed a Motion for Leave to Proceed *In Forma Pauperis*. For the following reasons, the Court will grant Adeyinka leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.     FACTS[1]

On January 16, 2008, Adeyinka was arrested in Philadelphia. The public dockets for his underlying criminal cases suggest that Officer Lomax was the arresting officer. *See*

---

[1] The following facts are taken from the Complaint and public dockets for the criminal proceedings underlying Adeyinka's claims.

*Commonwealth v. Adeyinka*, Docket Nos. MC-51-CR-0002986-2008 & MC-51-CR-0002987-2008 (Phila. Municipal Ct.). Adeyinka was charged in Philadelphia Municipal Court in two criminal complaints on January 17, 2008, and arraigned on January 18, 2008.

The first criminal complaint charged Adeyinka with indecent exposure and open lewdness. *See Commonwealth v. Adeyinka*, Docket No. MC-51-CR-0002986-2008 (Phila. Municipal Ct.). The public docket reflects that on January 20, 2009, Adeyinka was found guilty of indecent exposure and sentenced to a minimum of seven months and a maximum of twenty-three months of incarceration. The other charge was withdrawn at the time of the verdict.

The second criminal complaint charged Adeyinka with criminal attempt IDSI forcible compulsion, criminal attempt sexual assault, indecent assault forcible compulsion, indecent exposure, simple assault, recklessly endangering another person, open lewdness, and "Indec Asslt – W/O Cons. Of Other." *See Commonwealth v. Adeyinka*, Docket No. MC-51-CR-0002987-2008 (Phila. Municipal Ct.). Adeyinka was also found guilty of indecent exposure in the second case on January 20, 2009, according to the docket. He was sentenced to a maximum of twelve months of incarceration and the remaining charges were withdrawn.[2]

Adeyinka's Complaint references the dockets for his state criminal cases as the basis for his claims. (Compl. at 6.)[3] However, Adeyinka also alleges that he is bringing a claim for "Cruel and Unusual[] Punishment" based on "unclearly [sic] inhumane or that violates basic human dignity in Trop v. Dulles, 356 U.S. 86 (1958), unsafe practices and condition vermin infestation of fly and hazards mildew in the shower and cells." (*Id.* at 5.) Adeyinka adds that he was subjected to "sleeping in cart" and "frights." (*Id.* at 6.) He also indicates that the basis for

---

[2] Adeyinka's minimum sentence is not reflected on the docket.

[3] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

2

his claims is "18 U.S. Code § 1001 – Statements or entries generally   Miranda Rights – 18 U.S. Code § 1001 – Statements or entries generally." (*Id.*)

Adeyinka does not identify any injuries he sustained in connection with the events giving rise to his claims. However, he seeks a "total [of] 5 million dollar 400 hundred thousand dollar" in compensatory and punitive damages. (*Id.* at 7.)

## II.     STANDARD OF REVIEW

The Court will grant Adeyinka leave to proceed *in forma pauperis* because it appears that he is not financially capable of paying the fees to commence this civil action. Accordingly, the Court must dismiss the Complaint subject to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) if it is frivolous or fails to state a claim for relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by, Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As Adeyinka is proceeding *pro se*, the Court construes

3

his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Claims Under Criminal Statutes

Adeyinka cites as the basis for some of his claims 18 U.S.C. § 1001, which is a federal statute criminalizing false statements. However, criminal statutes, including § 1001, generally do not provide a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Davis v. Jordan*, 573 F. App'x 135, 137 (3d Cir. 2014) (per curiam) ("[A] private cause of action does not exist under 18 U.S.C. § 1001, which is a criminal statute."). Accordingly, the Court will dismiss any claims under this statute as legally baseless.

#### B. Constitutional Claims Under 42 U.S.C. § 1983

The Court also understands Adeyinka to be pursuing claims under 42 U.S.C. § 1983 for violation of his constitutional rights. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Adeyinka has not stated a claim for various reasons.

First, Adeyinka's claims fail because has not clearly stated what Lomax and/or the City of Philadelphia did or did not do to violate his rights. Accordingly, he has not stated against them. However, even if the Court liberally construes Adeyinka to be raising claims against Lomax based on his 2008 arrest, and against the City based on the conditions of his related incarceration, his claims fail.

4

Pennsylvania's two-year limitations period applies to Adeyinka's claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Otherwise, the limitations period began to run when the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Here, any claims against Lomax for false arrest and/or false imprisonment accrued in January of 2008, when Adeyinka was arrested and detained prior to his arraignment. *See Morales v. Busbee*, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment."); *see also Wallace*, 549 U.S. at 390 (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"). As Adeyinka did not file this case until several years after the statute of limitations expired on his claims, and as there is no basis for tolling, his claims are time-barred.[4]

---

[4] Even if Adeyinka sought to bring malicious prosecution claims, which is unclear, his claims fail. "[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted). As Adeyinka was found guilty in both cases, and as those convictions were never vacated or otherwise called into question, any claims challenging those convictions are not cognizable. Indeed, Adeyinka has already been informed of this legal principle. *See Adeyinka v. Texas Dep't of Justice*, No. CV H-18-2782, 2018 WL 3880361, at *2 (S.D. Tex. Aug. 15, 2018) (dismissing claims pursuant

5

Adeyinka's claims based on his conditions of confinement are also time-barred. Even assuming Adeyinka served his maximum sentences in both cases and that he served those sentences consecutively, he would have been released by 2011 or 2012 at the latest. Accordingly, the statute of limitations on his claims, which would have accrued when Adeyinka was subjected to the conditions in question, would have expired in 2014 at the latest, such that his current claims are untimely.[5] Indeed, the Court has already dismissed a prior case filed by Adeyinka arising from his 2008 incarceration at the Curran-Fromhold Correctional Facility as time-barred. *See Adeyinka v. Philadelphia*, No. 18-CV-3253, 2018 WL 5923446, at *2 (E.D. Pa. Nov. 13, 2018) (dismissing as time-barred excessive force claims that occurred in July or August of 2008 while Adeyinka was incarcerated at the Curran-Fromhold Correctional Facility).

However, even if Adeyinka's claims arising from his confinement were not time-barred, he has not stated a claim for a constitutional violation. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Because Adeyinka's status at the time of the events giving rise to his claims is not clear from the Complaint, the Court will analyze the

---

to *Heck*). Even if there were a basis for bringing malicious prosecution claims based on charges that were withdrawn in 2009 after Adeyinka was found guilty, the two-year statute of limitations has long since expired on those claims. *See Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (en banc) (explaining that, for favorable termination—an element of a malicious prosecution claim- -to exist, "upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged"); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989) (explaining that the statute of limitations on a plaintiff's malicious prosecution claims accrues when he has a full and complete cause of action, that is, when the criminal proceeding in question terminated in his favor).

[5] There is no plausible basis for tolling here that would render Adeyinka's claims timely, even accounting for any tolling while Adeyinka exhausted administrative remedies.

Complaint under both amendments. To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also establish that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard*, 399 F.3d at 158.

Although the presence of flies, vermin, and mildew may have made Adeyinka's incarceration uncomfortable, those allegations do not plausibly suggest that Adeyinka was exposed to an unconstitutional threat to his life or safety, or subjected to unconstitutional punishment. *See Cook v. Corbett*, No. CIV.A. 14-5895, 2015 WL 4111692, at *8 (E.D. Pa. July 8, 2015) ("Nor does Cook state a claim under the Eighth Amendment based on the presence of mold growth in the RHU, as he does not state that this mold is pervasive or has made him ill."); *Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *4-5 (E.D. Pa. Feb. 12, 2014) (concluding that while presence of insects in prison was uncomfortable, plaintiff had not "demonstrated an unconstitutional threat to his health and safety"); *Hill v. Smith*, No. 05-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (concluding that mice and cockroaches in the cell are "admittedly uncomfortable conditions [that] . . . do not, by themselves articulate a situation that could be characterized as cruel and unusual punishment"). Furthermore, allegations of "unsafe" practices or conditions, "sleeping in cart," "hazards," and "frights" are too vague, generalized, and conclusory to state a claim. (Compl. at 6.)

7

Additionally, to state a claim against a municipality such as the City of Philadelphia, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Here, the Complaint does not clearly identify a municipal policy or custom that would establish a basis for liability based on Adeyinka's conditions of confinement.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Adeyinka's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Adeyinka will not be permitted to file an amended complaint, as amendment would be futile in light of the fact that Adeyinka's claims are clearly time-barred. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

/s/ Petrese B. Tucker
PETRESE B. TUCKER, J.

8